Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 567 | **DATE** | April 30, 2004 |
| **CASE TITLE** | SHEN WEI vs. ANSELL HEALTHCARE PRODUCTS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, the claims are construed as explained by this order, and defendant is granted summary judgment on the issues of whether it infringes claims 4, 6, 7, 9, 20, 27, 28, and 29. Status hearing is set for May 13, 2004 at 9:00am.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHEN WEI and MEDLINE INDUSTRIES, )
)
Plaintiffs, )
) No. 03 C 567
v. )
)
ANSELL HEALTHCARE PRODUCTS, INC. )
)
Defendant. )
)



## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Before this court is defendant Ansell Healthcare Products, Inc.'s ("Ansell") motion for summary judgment of noninfringement filed in response to Shen Wei, Inc. and Medline Industries, Inc.'s ("Shen Wei") complaint alleging patent infringement. The patent in question is U.S. Patent No. 6,423,328 B2. ("'328 patent.") Generally, this patent "relates to applying Aloe Vera on the inner surface of disposable gloves to protect and soothe the hands during and after application of disposable gloves." ('328 patent, Col. 1, 14-16.) Ansell presents four terms used in the claims of the '328 patent for construction: (1) "a coat of Aloe Vera;" (2) "a quantity of Aloe Vera;" (3) "dehydration/dehydrated;" and (4) "oil-based substance." Shen Wei alleges that Ansell infringes claims 4, 6, 7, 9, 12, 13, 20, 21, 22, 25, 26, 27, 28, 29, 35 and 38. Of these claims, 4, 12, 20, 21, 27, and 35 are independent claims. For the following reasons, this court construes and defines the disputed terms as explained below. Moreover, Ansell is granted summary judgment on the issues

1

of whether it infringes claims 4, 6, 7, 9, 20, 27, 28, and 29 and denied summary judgment as to claims 12, 13, 21, 22, 25, 26, 35 and 38 of the '328 patent.

ANALYSIS

I.  Claim Construction

Claim construction is a matter of law for the court to determine. Allen Eng'g Corp. v. Bartell Indus., Inc. 299 F.3d 1336, 1344 (Fed. Cir. 2002) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996)). The first step in construing a claim is to look to the intrinsic evidence concerning the patent, which includes the patent specification and prosecution history, if in evidence.[1] Id. It is improper to rely on extrinsic evidence when evaluation of the intrinsic evidence resolves the dispute regarding the construction of a claim. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996). "The words of the claims themselves define the scope of the invention, and are given their ordinary and customary meaning." Id. (citations omitted). Generally speaking, there is a heavy presumption that a claim term carries its ordinary and customary meaning. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).

The heavy presumption of plain meaning is rebutted, and a court may limit the ordinary meaning of a claim where: (1) the patentee acting as his own lexicographer clearly established a definition of the term different from its customary meaning in either the specification or prosecution history, Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); (2) "the term 'chosen by the patentee so deprive[s] the claim of clarity' as to require resort to other intrinsic evidence for a definite meaning, CCS Fitness, 288 F.3d at 1366 (citations omitted); (3) the patentee

---

[1] The prosecution history was submitted to this court on July 28, 2003. (Dkt. #12.)

phrases the claim in means-plus-function format, see 35 U.S.C. § 112 ¶ 6; Allen Eng'g, 299 F.3d at 1347-48; and (4) the doctrine of prosecution disclaimer applies.

"[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." Omega Eng'g v. Raytek Corp., 334 F.3d 1314, 1323 (7th Cir. 2003). See also Allen Eng'g, 299 F.3d at 1347-48 ("[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution"); Spectrum Int'l, Inc. v. Sterlite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998) ("[E]xplicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of the claim."); Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985) ("[T]he prosecution history . . . limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."). The doctrine of prosecution disclaimer is not applied where the "alleged disavowal of claim scope is ambiguous." Omega Eng'g, 334 F.3d at 1324.

Turning to the claim terms for which definitions are requested:

    A.    Coat of Aloe Vera

For the reasons set forth below, this court interprets the claim term "coat of Aloe Vera" in the '328 patent to mean:

> a coating that may include ingredients other than aloe vera but the aloe vera must account for more than 0.5% of the entire coating.

Ansell's first request regarding construction of this term is that it be interpreted to mean a

coat consisting entirely of aloe vera and no other substance. (Def.'s S.J. Mem., at 4-6.) In support, Ansell relies heavily on Robie v. Carlton, 171 F.2d 310 (C.C.P.A. 1948), which carries precedential weight. BMW Mfg Corp. v. United States, 241 F.3d 1357, 1362 n.3 (Fed. Cir. 2001) ("Decisions of the Court of Customs and Patent Appeals are binding precedent on [the Federal Circuit].) And what Ansell alleges is Shen-Wei's disclaimer of any ingredients other than aloe vera when referring to the term "coat of Aloe Vera." This court finds neither of these contentions availing. The court in Robie explained that when a "reference is made to a coat of paint, or a coat of varnish, the meaning ordinarily intended is that the coat consists entirely of the specified material." Id. at 311. Assuming that Robie creates a presumption that use of the term "coat" excludes the use of other ingredients, this court would still find that such a presumption would not apply in this case. To read claim 4's reference to a "coat of Aloe Vera" as excluding the use of other ingredients would render claim 1's reference to "a coat of 100% Aloe Vera" superfluous. The Court of Appeals for the Federal Circuit has made clear that the use of different terms in claims is presumed to reflect differing scopes of the claims. Forest Labs., Inc. v. Abbott Labs., 239 F.3d 1305, 1310 (Fed. Cir. 2001) (citation omitted). The use of "a coat of 100% Aloe Vera" in claim 1 indicates that the "coat of Aloe Vera" in claim 4 may include other ingredients. This court additionally agrees with Shen Wei that the reference in claim 20 to "a coating comprising Aloe Vera and no detectable oil-based substance" is not fatal to the conclusion that claim 4's reference to a "coat" includes substances other than aloe vera, because the use of the term "comprising" in claim 4 is used to identify the fact that the exclusion of "oil-based substance" did not otherwise limit the inclusion of ingredients along with aloe vera.

Contrary to Ansell's assertions, the prosecution history of the '328 Patent does not clearly

indicate that Shen Wei disclaimed the use of ingredients other than aloe vera. The passage put forth by Ansell in support of disclaimer[2] explicitly focuses on claim 1, not claim 4 or any other claim, and the accompanying passage that Ansell alleges incorporates the alleged disclaimers of claim 1 into the other claims is at best ambiguous in that regard. Therefore, it is not clear from the prosecution history whether Shen Wei during the prosecution of the '328 patent disavowed the use of ingredients other than aloe vera. Even if the passage Ansell asserts as a disclaimer can be so interpreted, it is not clear whether that alleged disavowal applies beyond claim 1.[3] After carefully reviewing the

---

[2] Ansell alleges that the following excerpt from the prosecution history of the '328 patent acts to disclaim the use of ingredients other than aloe vera:
> In fact, by teaching the presence of so many ingredients that are not Aloe Vera, Buchanan actually <u>teaches away</u> from Claim 1's limitation of "a coat of 100% Aloe Vera". For example, Applicants note that Buchanan repeatedly stresses the importance of including an antiperspirant agent. Since Aloe Vera is not taught or known as an antiperspirant agent, Buchanan again <u>teaches away</u> from Claim 1's limitation of a "coat of Aloe Vera". Buchanan also stresses the importance including an antibacterial agent and lists <u>many</u> (about 48) different antibacterial agents <u>without</u> listing Aloe Vera. (See Buchanan, p. 9.) In short, Buchanan teaches the importance of including various complex ingredients other than Aloe Vera. Such teaching constitutes <u>teaching away</u> from Claim 1's limitation of "a coat of 100% Aloe Vera". Based on such teaching away, there would be no <u>expectation of success</u> for any modification of Buchanan to obtain "a coat of 100% Aloe Vera", because Buchanan teaches that Buchanan's agents are crucial and that the agents include non-Aloe Vera ingredients.

(Def.'s S.J. Mem. at 5-6) (quoting Dkt. #12 at 38.)

[3] Ansell alleges that the following excerpt from the prosecution history of the '328 patent acts to incorporate claim 1's disclaimer of materials other than aloe vera into claims 4, 12, 22, and 28:
> Remaining independent Claims 4, 12, 15, 22, 28, 32, and 37 each include limitation(s) similar to limitation(s), discussed above, of Claims 1 or 20. Accordingly, Applicant respectfully submits that these remaining independent Claims are allowable under Sections 102(b) and 103(a) for at least reasons similar to those discussed above in connection with Claim 1 or 20.

(Def.'s S.J. Mem. at 6) (quoting Dkt. #12 at 40.) The limitations "discussed above" include the fact that claim 1 is patentable over Buchanan not only because of the term "a coat of 100% Aloe Vera," but also because of the term "dehydration." Furthermore, what is "discussed above" this

5

prosecution history to which Ansell has referred, this court rules that Shen Wei has not disclaimed the use of ingredients other than aloe vera. Omega Eng'g v. Raytek Corp., 334 F.3d 1314, 1323 (7th Cir. 2003) (explaining that the doctrine of prosecution disclaimer is not applied where the "alleged disavowal of claim scope is ambiguous.").

Accordingly, this court rejects Ansell's argument that the term "coat of Aloe Vera" must be construed to exclude the use of ingredients other than aloe vera.[4]

However, in support of Ansell's second request – that the term "coat of Aloe Vera" should be limited to a coat where the aloe vera accounts for more than 0.5% of the coating – Ansell does point to an unambiguous disclaimer by Shen Wei in the prosecution history of the '328 patent:

> No person would call the composition of Buchanan a 'coat of Aloe Vera,' as recited by Claim 4, because, quite simply, Buchanan's composition is a complicated composition that contains a mere 0.5% of aloe extract, and is described as if the aloe extract had no significant contribution to the composition.

(Def.'s S.J. Mem. at 6) (quoting Dkt. #12 at 41). Ansell is correct to argue that this statement made to the Patent and Trademark Office ("PTO") amounts to a disclaimer as to the scope of the term "coat of Aloe Vera." Specifically, Shen Wei has disclaimed and excluded from the meaning of the term "coat of Aloe Vera" in the '328 patent any coat that contains 0.5% or less of aloe vera.

---

particular portion of prosecution history includes a discussion distinguishing claim 20 from Buchanan. Thus, it is not clear that the prosecution history incorporated claim 1's limitation of one hundred percent aloe vera into claims 4, 12, 22, and 28.

[4] This conclusion – that "coat of Aloe Vera" need not be one hundred percent aloe vera – becomes unnecessary to the determination of whether Ansell infringes the claim term "coat of Aloe Vera," because this court later finds that a "coat of Aloe Vera" must include more than 0.5% aloe vera. See infra Part II. Nevertheless, this issue was briefed by the parties and Ansell relies on similar arguments regarding its construction of "quantity of Aloe Vera." See infra Part I.B.

Shen Wei does not address this specific disclaimer quoted above, but does argue that its disclaimers regarding the Buchanan patent lend nothing to the construction of "a coat of Aloe Vera" because Buchanan does not teach applying aloe vera, in any amount, to the inside of gloves. This court disagrees with Shen Wei's construction of Buchanan on this point. Buchanan mentions aloe vera in the context of a set of examples that are "set forth for the purpose[] of providing a better understanding of the composition of the . . . invention and the formulations into which it can be incorporated." (Buchanan at 13.)[5] Admittedly, the use of aloe vera appears in the Buchanan patent's example 3, which only specifically discloses that the "resulting formulation can be used by applying it to the hands prior to donning a protective medical glove" (Id. at 17.) Nevertheless, Buchanan generally teaches a "composition" that "can be applied to the hand in powder or lotion form or [that] can be applied as a coating to the interior surface of a protective medical glove." (Id. at 5.) Furthermore, the Buchanan specification explicitly notes that while the examples given "described in detail [certain] preferred embodiments [of the invention], one of ordinary skill in the art will appreciate that certain modifications can be made to the present invention without departing from its true sprit and scope." (Id. at 21.) One of these "modifications" apparent to "one of ordinary skill in the art" is the use of the disclosed examples as a coating applied to the interior of the glove, even if the specific embodiment disclosed only mentions using the composition on the hands prior to donning a glove. This conclusion is supported by the fact that Shen Wei assumed this obvious modification of Buchanan's example 3 because Shen Wei found it necessary to distinguish its

---

[5] As exhibit C to Shen Wei's Declaration of Thomas B. Kenworthy submission, this court was provided with a copy of the Buchanan patent granted by the World Intellectual Property Organization and designated as International Publication Number WO 94/12115. However, the entire book of exhibits is not paginated. Therefore, this court cites directly to the Buchanan patent, which is represented without challenge to be a true and accurate copy.

invention, which only teaches a coating applied to the glove, from Buchannan by asserting that a composition containing only 0.5% of aloe vera could not be considered a "coat of Aloe Vera" as disclosed in claim 4 of the '328 Patent.

This court also disagrees with Shen Wei's apparent assertion that it only disclaimed the use of 0.5% or less of aloe vera when that use also has "no significant contribution" to the coating. The excerpt of the '328 patent's prosecution history quoted above (Dkt. #12 at 41) clearly indicates that Shen Wei did not consider the term "coating of Aloe Vera" to include coatings where aloe vera made up less than 0.5% of the composition. The scope of this disclaimer is further clarified by the fact that Buchanan does not describe the contribution of aloe vera to the coating. Therefore, Shen Wei has specifically disclaimed any right to a "coat of Aloe Vera" that includes only 0.5% or less of aloe vera.

### B. Quantity of Aloe Vera

For the reasons set forth below, this court interprets the claim term "quantity of Aloe Vera" in the '328 patent to mean:

an indefinite amount of aloe vera.

Ansell has asked this court to read into this term the same limitations it requested for "coat of Aloe Vera." As before, Ansell first argues that "quantity of Aloe Vera" should be interpreted to mean a quantity consisting entirely of aloe vera and no other substance, and second, that if substances other than aloe vera are present along with the aloe vera, then the percentage of aloe vera must be greater than 0.5% of the entire quantity.

In support of its first proposed limitation, Ansell relies on the same arguments it makes regarding the term "coat of Aloe Vera"; that Shen Wei has disclaimed the use of ingredients other

8

than aloe vera and that Robie requires constructing "quantity" to exclude the use of other ingredients. As explained, this court finds no prosecution disclaimer of this scope. Furthermore, Ansell's reliance on Robie is misplaced. In Robie, the court explained that a "reference . . . to a *coat* of paint . . . ordinarily [means] that the *coat* consists entirely of the specified material." Robie, 171 F.2d 310, 311 (C.C.P.A. 1948) (emphasis added). This case is inapposite given that the court in Robie never considered the term "quantity," and the fact that Ansell (in response to Shen Wei's objection that Ansell was not considering "quantity" and "coat" as distinct terms) argued to this court that it "has never suggested that the terms 'coat' and 'quantity' have the same meaning." (Def.'s Reply at 3.) Finally, while Ansell asserts that Shen Wei has not used the terms "comprising" or "including" in conjunction with the term "quantity," Ansell has pointed to no case law, rule of construction, or other reason showing that not using these open terms requires the conclusion that a "quantity of Aloe Vera" cannot be aloe vera mixed with other ingredients. Therefore, this court refuses to limit the term "quantity of Aloe Vera" to substances consisting entirely of aloe vera.

Ansell apparently supports its second proposed limitation – that "quantity of Aloe Vera" should not include substances with 0.5% or less of aloe vera – with the same prosecution history citation in which Shen Wei disclaims a coat of aloe vera containing 0.5% or less of aloe vera. As with Ansell's attempt to apply Robie to the term "quantity," Ansell's attempt to apply Shen Wei's disclaimer regarding "coat of Aloe Vera" is hard to understand in light of Ansell's admission that the terms "coat" and "quantity" do not share the same meaning. Because the terms are not the same, Ansell cannot impose a limitation which applies to the term "coat" to the term "quantity" in the '328 patent.

Shen Wei argues that this court should construe "quantity" to mean an "amount." In support

9

it cites to a general dictionary defining "'quantity' as, among other things, an 'indefinite . . . amount.'" (Pl.'s 56.1(a) Stmt., ¶ 24.) While Ansell has argued in favor of its proposed limitations on the term "quantity," it has not objected to construing "quantity" according to its dictionary definition.[6] This court concludes that the term "quantity" should be defined to mean an "indefinite amount."

### C. Dehydration/Dehydrated

For the reasons set forth below, this court interprets the claim terms "dehydration/dehydrated" in the '328 patent to mean:

the removal of water, but not necessarily all water.

Ansell argues that the terms "dehydration/dehydrated" require the removal of all water. It supports this argument by first referring to testimony of an Ansell employee who testified that dehydration means the "removal of water as much as possible." (Def.'s S.J. Mem. at 7.) Ansell then quotes the '328 specification:

> Aloe Vera is attached to the surface of the glove through a controlled dehydration process. The water in the Aloe Vera solution is caused to evaporate through heating.

---

[6] "Dictionaries . . ., which are extrinsic evidence, hold a 'special place' and may sometimes be considered along with intrinsic evidence when determining the ordinary meaning of claim terms." Bell Atlantic Serv., Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001) (citation omitted). Furthermore, this court is aware of the Federal Circuit's admonishments regarding general purpose dictionaries. Id. ("[W]e have previously against the use of non-scientific dictionaries 'lest dictionary definitions . . . be controverted into technical terms of art having legal, not linguistic significance.'") (citation omitted); AFG Indus., Inc. v. Cardinal IG Co., 239 F.3d 1239, 1247-48 (Fed. Cir. 2001) ("This court has repeatedly cautioned against using non-scientific dictionaries for defining technical words.") (citation omitted). The definition utilized by this court is not contradicted by Ansell. (Def.'s 56.1(b) Stmt., ¶ 24.) Nor does Ansell object to its use, except to argue that its proposed limitations should be adopted. Finally, this court concludes that the adopted definition of "quantity" is not inconsistent with the specification or the prosecution history.

10

(Def.'s 56.1(a) Stmt. ¶ 17.) By focusing on the phrase "[t]he water . . . is caused to evaporate" Ansell argues that dehydration, as it is used in the '328 patent, should be defined as "removal of the water." Ansell apparently then assumes that the presence of "the" in the phrase, "removal of the water," requires removal of all water. Shen Wei, for its part, disputes the proposed limitation requiring the removal of all water.

Thus, it is clear that the parties agree that the terms should be construed to mean at least the removal of some water, but disagree about whether removal of all the water is required.[7] The claims do not recite Ansell's proposed limitation that the claim terms "dehydration/dehydrated" must be construed to require the removal of all water. The portion of the specification Ansell references is not an explicit or implicit definition set forth by the patentee to that effect.[8] This reference cannot be interpreted in a manner that requires the removal of all water, and even if such a clear limitation were stated, it would not necessarily act to limit a claim that contains no such limitation. See Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1368 (Fed. Cir. 2004) (quoting Tex. Digital Sys. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed. Cir. 2002) ("While . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that

---

[7] Ansell has not proposed a limitation less than removal of all water. Therefore, this court will not consider whether the terms should be construed to mean the removal of a specific quantity of water less than one hundred percent.

[8] This court rejects Ansell's argument that the doctrine of prosecution disclaimer requires construing the term to mean all water is removed. First, the argument suffers from a fatal procedural flaws. It was first raised in reply, thereby depriving Shen Wei of the opportunity to respond. Wright v. United States, 139 F.3d 551, 553 (7th Cir. 1998) (explaining that an argument cannot be first raised in reply). Second, this court cannot find an express disclaimer in the materials submitted by Ansell. This court can only assume that Ansell was similarly unable to find an express disclaimer which would explain why Ansell never specified a disclaimer in its memorandum except to say that it (whatever it may be) is inconsistent with defining dehydration to allow the presence of some water. (Def.'s Mem. at 7.)

11

limitations from the specification may be read into the claims."). None of the intrinsic evidence set forth by Ansell justifies its proposed limitation on the claim terms "dehydration/dehydrated."

Both parties have provided extrinsic evidence, in the form of expert testimony, in support of their respective positions. This court does not believe that this is a "rare circumstance [where] the court is unable to determine the meaning of the asserted claims [therefore justifying a resort] to extrinsic evidence to help resolve any lack of clarity." Dow Chemical Co. v. Sumitomo Chemical Co., 257 F.3d 1364, 1373 (Fed. Cir. 2001). Nevertheless, even if this court felt compelled to rely upon expert testimony, the testimony does not justify Ansell's proposed limitation. Ansell has not provided any testimony that directly supports its limitation. Ansell has also made no attempt to contradict the expert testimony Shen Wei advances contradicting Ansell's proposed limitation. (Pl.'s Resp., at 11-12.) Instead Ansell relies upon what it considers to be the clear import of the claims. (Def.'s S.J. Mem. at 7.) This reliance is misplaced though, because the language of the claims provides no justification for limiting the terms "dehydration/dehydrated" to instances where all water is removed. Therefore, this court refuses to adopt Ansell's limitation of dehydration.

D.  Oil-Based Substance

For the reasons set forth below, this court interprets the term "oil-based substance" in the '328 patent to mean:

a lotion or a greasy or oily substance.

Shen Wei argues that this term should be construed as a "lotion or a greasy or oily substance that has an adverse affect on natural rubber latex." (Pl.'s Resp. at 12.) This court adopts the first part of Shen Wei's proposed construction because Ansell agrees that this first part is the generally understood meaning of "oil-based substance." (Def.'s Reply at 7.) This court rejects the second part

of Shen Wei's definition – "that has an adverse affect on natural rubber latex" – as being an impermissible limitation on the claim language. Shen Wei supports its argument that "oil based substance" should be further limited to substances having an adverse affect on natural rubber or latex with excerpts from the specification allegedly defining "oil-based substance," and expert testimony. This court will address each in turn.

It is well understood that a patentee may act as his or her own lexicographer by establishing definitions of a term different than that term's customary meaning. Vitronics Corp. v. Conceptronic, Inc. 90 F.3d 1576, 1582 (Fed. Cir. 1996). Despite Shen Wei's arguments to the contrary, the patentee in this case has not defined oil-based substance as a substance that has an adverse affect on natural rubber latex. See Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998) (explaining that a special definition provided by the patentee "must be sufficiently clear in the specification that any departure from common usage would be understood by a person of experience in the field of the invention."). In a number of places, the specification explains that a major advantage of using non-oil-based substances is an increased shelf life of a natural rubber glove. But explaining an advantage of using oil-based substance is not the same as signaling to the reader of the patent that the customary meaning of a term is no longer applicable. In both cases cited by Shen Wei the patentee clearly limited the meaning of a claim term by providing a definition in the specification. See Multiform, 133 F.3d at 1477 (patentee limited to specific description in the specification of how an envelope is "degradable," and could not broaden the scope of that term with a general dictionary definition); Scimed Life Systems v. Advanced Cardiovascular, 242 F.3d 1337, 1343 (Fed. Cir. 2001) (explaining that while it is not necessary to use a "definitional format" to limit a claim, a claim term is defined and thereby limited to that definition when the patentee describes

13

a certain structure as that which applies for "all embodiments of the prevent invention contemplated and disclosed"). The specification in this case does not state that an oil-based substance is a substance that is (or is defined to mean) a substance that degrades rubber or latex. And the fact that the proposed limitation is simply consistent with, and not contradicted by, the specification is certainly not enough to rebut the presumption that a term should be given its ordinary meaning. The law requires a clear departure from common usage. No such definition or limitation has been provided in this case.

Furthermore, as Ansell points out, the '328 Patent discloses two advantages of using non-oil-based substances, not just the advantage Shen Wei claims acts as a definition, but also the advantage that non-oil-based substances will not make hands look or feel greasy. ('328 Patent, Col. 2, 5-9.) Thus, if it were possible to limit a claim term by describing its benefits, it seems that a further limitation on the term oil-based substance would be that the substance does not leave the skin feeling or looking greasy. This construction however, which Shen Wei would presumably object to, is improper because no clear definition of the term "oil-based" substance has been provided by the patentee. Therefore, the term will be given its ordinary and customary meaning to those skilled in the art.

Shen Wei has provided extrinsic evidence it believes supports the argument that those skilled in the glove making industry ordinarily consider "oil-based substance" to include the limitation of not having an adverse affect on rubber or latex. Shen Wei has made no showing that resort to extrinsic evidence is necessary to construe this term, nor does this court make any such conclusion. Dow Chemical Co. v. Sumitomo Chemical Co., 257 F.3d 1364, 1373 (Fed. Cir. 2001) ("[I]n the rare circumstance that the court is unable to determine the meaning of the asserted claims after assessing

14

the intrinsic evidence, it may look to additional extrinsic evidence to help resolve any lack of clarity.") (citation omitted). Moreover, none of the evidence Shen Wei asserts is on point. The extrinsic evidence Shen Wei posits consists of expert testimony which generally can be described as supporting one of the following two propositions: first, that the '328 Patent either defines oil-based substance with the limitation that it not damage rubber or latex, see (Pl.'s 56.1(a) Stmt., ¶¶ 47, 49, 50); or second, that such a definition would be consistent with the common knowledge that oil-based substances damage rubber (Id., ¶ 47, 48). This court, whose function it is to construe the patent, has already rejected the former, and the latter does not purport to define the claim term. Therefore, this court finds that the extrinsic evidence provided by Shen Wei does not support the conclusion that those skilled in the art consider the ordinary meaning of "oil-based substance" to include the limitation that the substance adversely affects rubber or latex.

II. Infringement

Having resolved the meaning of the disputed claim terms the court now turns to the issue of infringement. The determination of whether infringement has occurred is a question of fact for the jury. Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1369 (Fed. Cir. 2004). "To prove infringement, the patentee must show that the accused device meets each claim limitation."[9] Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314, 1324 (Fed. Cir. 2003). "Where the parties do not dispute any relevant facts regarding the accused product . . ., the question of literal infringement collapses into claim construction and is amenable to summary judgment." General Mills Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997).

---

[9] Shen Wei does not assert infringement under the doctrine of equivalents. (Pl.'s 56.1(a) Resp., ¶ 10.)

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

As stated at the outset of the opinion, Shen Wei alleges that Ansell infringes claims 4, 6, 7, 9, 12, 13, 20, 21, 22, 25, 26, 27, 28, 29, 35 and 38. (Pl.'s 56.1(a)(3) Stmt., ¶ 8.) Of these claims, 4, 12, 20, 21, 27, and 35 are independent claims.

Ansell is granted summary judgment on the issue of whether it infringes claims 4, 6, 7 and 9 of the '328 patent, all of which require a "coating of Aloe Vera." It is an undisputed material fact that if aloe vera is present on the inner surface of Ansell's gloves the aloe vera would account for only 0.3% of the entire coating. (Pl.'s 56.1(a)(3) Stmt., ¶ 41.) Therefore, because the term "coat of Aloe Vera," as used in the '328 patent, requires the use of more than 0.5% of aloe vera, Ansell's product does not infringe those claims requiring a "coat of Aloe Vera" (claims 4, 6, 7, 9).

Ansell is also granted summary judgment on the issue of whether it infringes claims 20, 27, 28 and 29 of the '328 patent, all of which require that "no detectable oil-based substance" be present. It is an undisputed material fact that after donning Ansell's gloves a "greasy" residue is left on the wearer's hands. (Pl.'s 56.1(a)(3) Stmt., ¶ 57.). This greasy residue must come from the coating on Ansell's gloves. Oil-based substance has been construed to mean a "lotion or a greasy or oily

16

substance." Therefore, Ansell's product does not infringe on claims 20, 27, 28 and 29 because the product contains a "greasy" substance.

There exists an issue of fact as to whether Ansell infringes the remaining claims. All of the claims Ansell is alleged to infringe require the presence of aloe vera. After initially arguing that its gloves do not contain aloe vera, Ansell now "concedes that the question of whether [its] gloves contain Aloe Vera may be a disputed issue of fact that is not ripe for summary judgment." (Def.'s Reply at 2.) This court agrees. Shen Wei has provided evidence that creates an issue of fact as to whether Ansell's gloves contain aloe vera. (Pl.'s Resp. at 3-4.) Therefore, Ansell cannot obtain summary judgment on the basis that its product does not infringe the claims of the '328 patent that require a "quantity of Aloe Vera." Finally, Ansell cannot obtain summary judgment on the basis that any aloe vera present on its gloves is not "dehydrated" as required by the '328 patent because this court has rejected the claim construction necessary for such a conclusion.

## CONCLUSION

Accordingly, the claims are construed as explained by this order, and Ansell is granted summary judgment on the issues of whether it infringes claims 4, 6, 7, 9, 20, 27, 28, and 29. Counsel and the parties are urged to discuss settlement. This case is set for a status hearing at 9:00 a.m. on May 13, 2004.

ENTER:

JAMES F. HOLDERMAN

DATE: April 30 , 2004.